IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RICHARD B. DICKERSON,          )
                               )
        Plaintiff,             )
                               )
        v.                     )          Case No. 02-0941-CV-W-HFS
                               )
HEALTH MIDWEST, et al.,        )
                               )
        Defendants.            )

**MEMORANDUM AND ORDER**

Defendants have moved for summary judgment in this pro se case alleging race discrimination (Doc. 56). Plaintiff has filed only two pages in opposition (Doc. 62) but incorporates by reference his suggestions in support of his own motion.[1] Reply Suggestions (Doc. 64) have been received.

For reasons presented in defendants' original suggestions and reply suggestions, this case rather easily screens out as a racial termination question. There is nothing presented by plaintiff that approaches the considerable requirements for a racial harassment case, which was not even hinted at as a complaint by plaintiff until after he was discharged. Similarly, his claim of a failure to promote, shortly after he was first employed by the corporate defendants (referred to collectively as "Health Midwest") is deficient in demonstrating that a white woman perceived as being less qualified as a supervisor was chosen for the position. Assuming plaintiff was disappointed not to have been chosen, he makes no record that he was promised the supervisory position by someone who remained in authority (and this is not, in any event, a breach of contract case). Plaintiff asks that I consider Jones v. R.R. Donnelley & Sons Company, 124 S.Ct. 1836 (2004), in support of his timeliness claim

---

[1]These suggestions ramble on about various grievances, but do not anticipate and respond to defendants' motion.

under 42 U.S.C. §1981. The case deals with the federal "catch-all" limitation of four years. Whether the 1998 selection of Mary Jackson as a supervisor was before or after October 2 (the date of filing this 2002 complaint) is not dispositive. John Clay's familiarity with her previous supervisory work plainly justifies the selection, and plaintiff, then a new employee, makes no meaningful showing that he was passed over because of his race.

This motion must be decided, therefore, on whether or not plaintiff has a sound theory and factual support for a submissible jury case of racial discrimination in his discharge on May 20, 2002. I conclude the material submitted to the court by the parties would not allow a reasonable jury to find racial discrimination as the cause of discharge.

In his deposition plaintiff has listed some half dozen white employees whose attendance record he questions. Several were, however, terminated. In response, defendant has filed records of absences and tardy days; and plaintiff fails to identify any support in the record for his theory. His briefing does not challenge the completeness and accuracy of the record disclosure. Thus, on the showing made there would be nothing to present to the jury that supports a claim of racial discrimination.

Even if I assume that skillful legal counsel would be able to respond to defendants' filing I cannot create a submissible case for plaintiff that he, as a pro se party, has failed to do. Although plaintiff seems to be an unusually dextrous and intelligent lay litigator, he has failed to provide a focused presentation on the critical subject of comparative attendance and tardy records, and I note that he has been unable to obtain counsel who are sufficiently persuaded to serve as his counsel.

Going beyond the attendance records, however, we have an unqualified written warning (D. Exh. 14) that one more attendance problem will result in his discharge. No other employee has been identified as being so threatened, and thereafter forgiven when an unexcused absence next occurred.

2

It may be anticipated that plaintiff might assert that the warning to him was itself discriminatory, but this would be creating a record and an argument for him. Moreover, the warning letter is not in itself an adverse employment action that would qualify as a discriminatory act, violating the law against racial discrimination.[2]

Another major bar to recovery is plaintiff's own theory that the real reason for discharge was defendant's hostility to him because he had repeatedly gone over the head of the official who terminated him, John Clay, and complained to Clay's superior of various things, including a supposedly unjustified suspension without pay. As background plaintiff mentions a complaint about unsafe conditions and about how the commission compensation system has been calculated. The safety and commission system affects all employees, not just racial minorities, and the supposedly unfair conditions were challenged on the merits, not on grounds of racial discrimination. Therefore, plaintiff's protests are not the sort of protected activity covered by Title VII and other laws against racial discrimination. If retaliation occurred, it would not violate those laws. On the contested facts related to pretext, therefore, neither alternative is adequately shown to be racial in nature and neither would permit submission of this case to a jury.[3]

---

[2]See, e.g., Mattern v. Eastman Kodak Co., 104 F.3d 702, 707-8 (5th Cir. 1997). It might be argued that a discriminatory warning ripens into an adverse action even though there is perceived to be additional misconduct and a discharge occurs. But there is no adequate proof that the warning was discriminatory, or a pretext for exercise of racial hostility by John Clay, who terminated plaintiff.

[3]I note several minor twists in the argument that will not change the result. First, plaintiff occasionally mentions a theory that others with bad records have been reemployed. Failure to hire is not written up, however, as a ground for claiming discrimination, and plaintiff has not presented any evidence that he did, in fact, reapply and was rejected from employment. As with the second promotion possibility referred to in the material, he could not make a case without seeking the position. Secondly, I note that plaintiff claims there was a mysterious disappearance of a chit indicating that he had permission for his absence from work on the Friday before his discharge. This could create a factual dispute that, under some circumstances, might require a fact-finder to

3

On the record presented to me, therefore, I have no sound alternative other than to grant defendants' motion for summary judgment. Giving the plaintiff the benefit of all doubts, he has made some showing that he and other African American employees of Health Midwest have had unfortunate experiences at work. I suppose, however, that the work environment may not be quite as plaintiff depicts it, as defendants have appropriately focused on the issues that must be considered by the court. But there is a failure by plaintiff to satisfy the legal requirements for a racial discrimination case that should be submitted to a jury.

It is therefore ORDERED that summary judgment is granted to defendants and that the Clerk shall enter judgment in favor of defendants.

_____
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September _____, 2004

---

determine either that plaintiff has fabricated an excuse that evades impeachment or that the excuse existed in fact and was known to Clay, who terminated him. On the present record it is entirely speculative, even if plaintiff thinks it is suspicious, that Clay knew that permission had been given for the Friday absence and in some manner obtained and destroyed plaintiff's evidence. The person allegedly giving permission has not been produced, by affidavit or otherwise, to support the theory of a missing document. As I understand the procedure it should have been Mary Jackson, but plaintiff does not support that claim in argument or otherwise. Plaintiff is not entitled to submit speculative theories to a jury.

4

Kansas City, Missouri